## Third Department, February, 1959

## (February 4, 1959)

■ Robert H. Rehman, Jr., as Administrator of the Estate of Lawrence R. Rehman, Deceased, Appellant, v. State of New York, Respondent. Joseph Benson, as Administrator of the Estate of Joseph R. Benson, Deceased, Appellant, v. State of New York, Respondent. Reginald J. Scully, as Administrator of the Estate of Harold T. Scully, Deceased, Appellant, v. State of New York, Respondent.— Appeals from judgments of the Court of Claims. Three boys, each the son of one of the three claimants, were found drowned on July 30, 1953 in the impounding basin, a body of water within the boundaries of Hempstead Lake State Park. Two of the boys were 17 years old; one was 14. Claims based on negligence were dismissed by the Court of Claims after a trial. The boys had been missing since July 26. Between five and six o'clock that day they were seen floating together on a raft on the waters of the small reservoir, a body of water contiguous to the impounding basin but separated from it by a road. They also had been seen somewhat earlier on that day on the small reservoir by a mounted policeman who testified he ordered them off the raft and from the enclosed area. No permission to use these water for boating or swimming was established. On the contrary it was proved that their use was prohibited to the public. Although the body of water was within the boundaries of the park it was not part of the park facilities, but was part of a water supply. It was surrounded by a chain-link fence from six to eight feet high which circled both the impounding basin and the small reservoir. In the two-mile length of fence there were three or four breaks through which a person could enter and there was one opening 20 to 25 feet wide which was for the temporary use of a con-

tractor. There is evidence that the park authorities attempted to prevent recreational use of these waters by policing them. The mere fact that it was physically possible to get to the waters through breaks in the fence which surrounded them is not an invitation to the public to use them; nor is the fact they were physically located within the general area of a park such an invitation when they were thus fenced off. Even if there were no fence and a general invitation to float rafts on the water, it is not shown that the State's negligence caused the drowning of the boys. The potentiality of drowning exists in all waters if there is accident or casualty. The State would be liable to an invitee only if it failed to warn or guard against a known danger or a casualty that was to be anticipated and reasonably foreseen in the use of a facility it provided. Nothing about the impounding reservoir showed any danger that would not exist on the surface of any body of water. It is argued that rubbish and other material found at the bottom of the impounding reservoir might make it dangerous for swimmers to use the water. It is probable that most impounding reservoirs have rubbish and such material described in this record at the bottom. There is no proof of any connection whatever between the drownings and the rubbish on the bottom; or, indeed, that the boys were using the water for swimming. The last observation made of them was that they were using a raft on the adjacent body of water. We agree with the Court of Claims that responsibility in negligence for the drownings has not been brought home to the State. Judgments affirmed, without costs. Foster, P. J., Bergan, Gibson and Herlihy, JJ., concur.